IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | |
|---|---|
| JESSE LYNN ADRIAN AMBROSE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:09-CV-242 |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Plaintiff *pro se* has filed this an action for judicial review, pursuant to 42 U.S.C. § 405(g), of defendant Commissioner's final decision denying his claim for Supplemental Security Income ("SSI") benefits. For the reasons provided herein, defendant's motion for summary judgment [doc. 14] will be granted. The final decision of the Commissioner will be affirmed.[1]

---

[1] Plaintiff was represented by counsel in the administrative proceedings below, but he comes before this court *pro se*. Plaintiff has not filed a dispositive motion, nor has he responded to the Commissioner's motion for summary judgment which was filed more than five months ago. The record does, however, contain a letter [doc. 5] written by plaintiff in response to the court's show cause order. Plaintiff's letter recites his alleged conditions and argues that those conditions render him disabled. Under typical circumstances, the court would deem a claimant's issues waived due the meager briefing of record. *See McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). However, in deference to plaintiff's *pro se* status, the court has considered the issues raised in his letter.

I.

*Procedural History*

Plaintiff was born in 1968. He applied for benefits in November 2006, claiming to be disabled by diabetes, carpal tunnel syndrome, neuropathy, fibromyalgia, degenerative bone and joint disease, osteoarthritis, rheumatoid arthritis, "bone spurs in neck cutting into nervous system," chronic obstructive pulmonary disease ("COPD"), chronic pain, and "restless leg syndrome." [Tr. 124, 138].[2] Plaintiff originally alleged a disability onset date of September 26, 2004. [Tr. 124]. His application was denied initially and on reconsideration. He then requested a hearing, which took place before an Administrative Law Judge ("ALJ") on September 10 and November 3, 2008.[3]

On December 10, 2008, the ALJ issued a decision denying benefits. He concluded that plaintiff suffers from the severe impairments of "diabetes mellitus; musculoskeletal impairments related to his chronic neck and low back pain and carpal tunnel syndrome; neuropathy; fibromyalgia; osteoporosis; respiratory impairment; depression; and anxiety," but that those conditions are not equal, individually or in combination, to any impairment listed by the Commissioner. [Tr. 13, 16]. The ALJ found plaintiff's subjective

---

[2] In his letter to the court, plaintiff additionally alleges disability based on anxiety, "severe clinical depression," pleurisy, "adult attention hyperactivity disorder" ("ADHD"), "severe Asthma . . . for which I am on oxygen at night and as needed and have a rescue in haler [sic]," and "sleep apnea for which I wear a monitor at night."

[3] At the hearings, plaintiff amended his alleged disability onset date to September 26, 200<u>6</u>. [Tr. 24, 56].

2

complaints to be not fully credible in light of the objective evidence. [Tr. 18-19]. Relying on the opinions of examining, nonexamining, and testifying physicians, the ALJ concluded that plaintiff retains the residual functional capacity ("RFC") to perform a range of light exertion. [Tr. 17]. Relying on vocational expert testimony, the ALJ further concluded that a significant number of jobs exist in the regional and national economies that plaintiff can perform. [Tr. 19-20]. Plaintiff was thus ruled ineligible for SSI benefits.

Plaintiff then sought review from the Commissioner's Appeals Council. Review was denied on August 28, 2009. [Tr. 1]. The ALJ's ruling therefore became the Commissioner's final decision. *See* 20 C.F.R. § 416.1481. Through his timely complaint, plaintiff has properly brought his case before this court for review. *See* 42 U.S.C. § 405(g).

II.

*Relevant Evidence*

February 2006 imaging of the cervical, thoracic, and lumbar spine generated no more than "minimal" findings. [Tr. 255-56]. Findings from March 2006 MRIs of the cervical and lumbar spine were "minimal," "small," "mild," and "unremarkable." [Tr. 253-54]. Similarly, July 2006 MRIs of the lumbar and cervical spine revealed only "mild" and "minimal" findings. [Tr. 204, 206]. Again in September 2006, cervical imaging was "unremarkable" and lumbar imaging showed only "mild" reduced bone density. [Tr. 421-22].

From at least early 2006 into early 2007, plaintiff was seen at the Mountain Home VA Medical Center ("VA"). Records from that provider contain a possible diagnosis

3

of carpal tunnel syndrome. [Tr. 244, 248, 251]. At a January 2006 appointment, plaintiff was noted to be "[b]asically, requesting narcotic pain medication" for purportedly worsening total-body pain. [Tr. 247]. Although physician Joseph Wallen diagnosed "probable narc dependency," prescriptions for morphine and oxycodone were nonetheless provided. [Tr. 241, 248]. Subsequent VA records show two failed drug screens, along with considerable difficulty getting plaintiff to appear for those screens or for pill counts. [Tr. 230, 234, 237-40]. Following the second failed drug screen, Dr. Wallen discontinued the morphine and oxycodone prescriptions and wrote, "I want to avoid short acting narcs as much as possible in this patient." [Tr. 227-28]. Dr. Wallen subsequently wrote, "he has violated his narc contract by getting narcs from another provider, and trust between us is nil." [Tr. 225]. Plaintiff then began obtaining hydrocodone from "a walk-in clinic over by Gregg's Pizza." [Tr. 224].[4]

Dr. Karl Konrad performed a consultative physical examination in April 2007. Dr. Konrad wrote, "I do not believe I received full cooperation from this client during his exam." [Tr. 261]. Carpal tunnel and fibromyalgia testing were both negative. [Tr. 261].[5]

---

[4] In his sworn testimony before the ALJ, plaintiff presented an entirely different version of this episode. According to him, it was in fact Dr. Wallen who "just kept wanting to give me pain medications" even though "I told him, I said, I am not here to, to seek out pain medicine." [Tr. 32]. Plaintiff further stated "that wasn't true at all" when asked about his repeated violations of the VA pain medication contract. [Tr. 32]. "They drug tested me every single week while I was there, for the whole time that I ever went there, and I've never failed them on a drug test." [Tr. 33].

[5] Dr. Abdelrahman Mohamed had previously diagnosed possible fibromyalgia [Tr. 454], but plaintiff does not direct the court's attention to any evidence that Dr. Mohamed (or any other source (continued...)

4

Plaintiff changed positions and moved on and off the examination table without difficulty. [Tr. 261]. He exhibited a limp which appeared to be "voluntary." [Tr. 261]. Despite plaintiff's claims of absolute and total disability, his palms were observed to be "somewhat callused and dirt grimed." [Tr. 262]. Dr. Konrad concluded that plaintiff "has no impairment-related physical limitations." [Tr. 262].

Neurologist Gamal Boutros conducted a motor nerve study in June 2006. Results indicated bilateral neuropathy, but Dr. Boutros deemed the findings to be "of unclear significance." [Tr. 409]. In September 2006, Dr. Mohamed noted possible neuropathy or carpal tunnel syndrome. [Tr. 445]. Dr. Mohamed has also mentioned "possible diabetes." [Tr. 442].

Dr. Mubashir Mahmood reviewed bone density testing in September 2006. According to Dr. Mahmood, plaintiff's lumbar vertebrae were in the "osteopenic range" and there was a "significantly high risk for osteoporotic fractures." [Tr. 295]. Plaintiff now claims [Tr. 432; doc. 5, p.2] that "Dr. Mahmood told him he has the skeleton of a 90 year old man," but the court's review of the administrative record did not uncover support for that contention.

Nonexamining Dr. Dorothy Linster completed a Physical RFC Assessment in June 2007. Dr. Linster opined that plaintiff would be limited to medium exertion with no concentrated exposure to hazards or respiratory irritants. [Tr. 267-74]. Nonexamining Dr.

---

[5](...continued)
other than Dr. Konrad) actually performed trigger-point testing for that condition.

Frank Pennington completed a Physical RFC Assessment in January 2008. Dr. Pennington also opined that plaintiff would be limited to medium exertion, with no concentrated exposure to respiratory irritants and no more than frequent postural movements. [Tr. 349-56].

In June 2005, Dr. Edward Perez wrote that plaintiff was "doing very well" on anti-anxiety medication. [Tr. 419]. Neurologist Mohamed diagnosed ADHD in April 2007 and prescribed Adderall. [Tr. 435]. Dr. Jeffrey Bryant's January 2008 review of the administrative record indicated no severe mental impairment. [Tr. 335-348].

Having reviewed the entire administrative record, Dr. Theron Blickenstaff testified as a medical expert at the administrative hearing. [Tr. 43-45]. Dr. Blickenstaff noted "some objective evidence" but opined that the "testimony here today is rather striking and . . . quite disproportionate to the objective findings." [Tr. 43-44]. He concluded that plaintiff remains capable of performing between light and medium work with "[e]xposure to high concentrations of vapors, fumes, dusts and any pulmonary irritants . . . to be avoided." [Tr. 44]. In response to questioning from plaintiff's counsel regarding the possible side effects of medication, Dr. Blickenstaff responded, "Given the discrepancies between the, the drug tests and, and prescribing, it's difficult to tell from the record what, what is actually being taken. . . . [T]here's too many conflicts in the record for me to be able to sort, sort any of that out." [Tr. 44-45].

III.

*Applicable Legal Standards*

This court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The "substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Beavers v. Sec'y of Health, Educ. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978) (quoting *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488 (1951)). In reviewing administrative decisions, the court must take care not to "abdicate [its] conventional judicial function," despite the narrow scope of review. *Universal Camera*, 340 U.S. at 490.

An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. *See* 42 U.S.C. § 1382(a). "Disability" is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiffs bear the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id*.

IV.

*Analysis*

The court concludes that the ALJ's decision was supported by substantial evidence. The record contains four medical source opinions regarding vocational capability:

1. Dr. Konrad opined that plaintiff has no limitation whatsoever.

2. Dr. Linster opined that plaintiff would be limited to medium exertion with no concentrated exposure to hazards or respiratory irritants.

3. Dr. Pennington opined that plaintiff would be limited to medium exertion with no concentrated exposure to respiratory irritants and no more than frequent postural movements.

4. Dr. Blickenstaff opined that plaintiff would be limited to between light and medium exertion with no concentrated exposure to respiratory irritants.

The ALJ concluded that plaintiff retains the following RFC: "simple, repetitive routine work at the light level of exertion which does not require greater than occasional posturals and that does not require working in an environment which would expose him to respiratory irritants." [Tr. 17]. The ALJ therefore completely disregarded the least restrictive vocational assessment (Dr. Konrad), accepted the most restrictive assessment in full (Dr. Blickenstaff) [Tr. 47], and then additionally imposed Dr. Pennington's restriction on postural movement. In so doing, the ALJ assigned virtually the lowest RFC that would be supported by the opinion evidence.[6] The ALJ then gave plaintiff further benefit of the doubt [Tr. 18]

---

[6] The only omitted restriction was Dr. Linster's limitation regarding heavy exposure to hazards. Plaintiff makes no argument that this omission was error, and the court sees no error based on the record before it.

9

by restricting him to simple and repetitive work based on allegations of depression and anxiety, even though the severity of those conditions is documented nowhere in the record.

Under substantial evidence review, plaintiff's dissatisfaction with the ALJ's decision is unavailing. The minimal objective evidence was taken into account in the opinions of Drs. Blickenstaff, Linster, and Pennington. What then remains is the extent to which plaintiff's subjective complaints should be credited above and beyond the medical source opinions.

The severity (and, in some cases, the mere existence) of many alleged conditions is unsupported by the record, including the purportedly severe respiratory ailments, the purportedly severe mental conditions, fibromyalgia, and perhaps even diabetes. Moreover, plaintiff's claim of multiple disabling breathing disorders cannot be taken seriously as he continues to smoke as many as two packs of cigarettes per day [Tr. 464]. In that respect, plaintiff's style of life is utterly inconsistent with that of a person who truly suffers from the limitations alleged. *See Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988). Similarly, if plaintiff's carpal tunnel symptoms were truly as bad as he claims, a reasonable mind would conclude that plaintiff would have followed through with non-narcotic treatment options for that condition, particularly since the record indicates he has medical care provided both by the state of Tennessee and by the VA.

Returning to the issue of fibromyalgia, "The process of diagnosing fibromyalgia includes (1) the testing of a series of focal points for tenderness and (2) the

ruling out of other possible conditions through objective medical and clinical trials." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 244 (6th Cir. 2007). Based on the undersigned's review of the record (some of which is admittedly hand-written and difficult to read), the only physician who performed focal point testing was Dr. Konrad, and that testing was negative. Even if plaintiff had been properly diagnosed, "a *diagnosis* of fibromyalgia does not automatically entitle [the claimant] to disability benefits . . . . Some people may have a severe case of fibromyalgia as to be totally disabled from working . . . but most do not and the question is whether [claimant] is one of the minority." *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir. 2008) (emphasis in original) (citation and quotation omitted).

As for plaintiff's claim that he suffers from rheumatoid arthritis, he appears to rely on a diagnosis by his girlfriend [Tr. 448] even though Dr. Mohamed has told him that "previous testing for rheumatoid factor . . . was negative." [Tr. 448].[7] Other allegations similarly do not find support in the court's review of the record and, on their face, appear somewhat incredible. For example, plaintiff claims: to have lost four inches in height due to bone loss [Tr. 25]; that a broken window "severed [his] arm completely" [Tr. 29-30]; that he is required to wear a back brace and a neck brace during every waking moment [Tr. 66, 168, 174]; that "it is only a matter of time" before his alleged diabetes inevitably "claims my eye sight and internal organs" [doc. 5, p.2]; and that he "ha[s] worked [his] entire life" [doc.

---

[7] In July and August 2006, Dr. Mohamed also wrote that, generally, "The patient had previous extensive investigations that were essentially unrevealing." [Tr. 446, 449].

11

5, p.2], even though his earnings record shows eight years with no reported income, two years with reported income of less than sixty-one dollars, and four other years with reported income of less than one thousand dollars. [Tr. 130-31]. Cumulatively, these discrepancies suggest a claimant significantly prone to overstatement.

Ultimately, the ALJ found himself unable to believe plaintiff's claims of multiple unrelenting and disabling conditions. [Tr. 18-19]. In light of the record before the ALJ, there was no error in that credibility determination. The ALJ correctly relied on the concerns raised by Drs. Konrad and Blickenstaff as cited herein. [Tr. 19]. The court further specifically notes the ALJ's concern over the discrepancies between plaintiff's VA drug testing testimony and what was actually shown in the VA records. The ALJ did not err in choosing to credit evidence generated by that presumably disinterested medical source.

V.

*Conclusion*

The final decision of the Commissioner is supported by substantial evidence and must therefore be affirmed. An order consistent with this opinion will be entered.

ENTER:

                                              s/ Leon Jordan
                                       United States District Judge